[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12494
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 17, 2011
JOHN LEY
CLERK

D.C. Docket No. 0:09-cv-61685-KAM

PAULA JOHNSON,

Plaintiff-Appellant,

versus

ELIZABETH R. WELLBORN, P.A.,
MORRIS LAING EVANS BROCK & KENNEDY CHTD.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2011)

Before EDMONDSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Paula Johnson appeals pro se the district court's denial of her motion to

remand and the dismissal of her pro se amended complaint. After review, we affirm.

## I. BACKGROUND

### A. Original State Court Complaint and Removal

Johnson's action arose out of an attempt to obtain a mortgage loan modification with Ocwen Loan Servicing, LLC ("Ocwen") in March 2009. Johnson, a citizen of Illinois, filed her original pro se complaint in a Florida state court against defendants Elizabeth R. Wellborn, P.A. ("Wellborn") and Rick A. Kear of the Law Offices of Morris, Laing, Evans, Brock & Kennedy, Chtd. ("Kear"), whom Johnson alleged were debt collectors and agents of Ocwen.

Johnson's original complaint asserted claims under the Fair Housing Act ("FHA") regulations, 24 C.F.R. § 100.120, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c-1692p, and state law. Johnson sought over $250,000 in damages and a preliminary injunction. Johnson attached a certificate of service to her complaint. The certificate stated that she had "forwarded" a copy of "this Petition and a NOTICE OF COMMENCEMENT OF ACTION-WAIVER OF SERVICE OF PROCESS . . . to Defendants, electronically via Email delivery on September 27, 2009," and listed e-mail addresses and Florida mailing addresses for each defendant.

Defendant Wellborn removed the action to the federal district court in Miami. Wellborn's notice of removal stated that: (1) the basis for removal was federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367; (2) complete diversity existed between Johnson and the defendants and the amount in controversy exceeded $75,000;[1] and (3) because the other defendant, Kear, had not been served, Wellborn did not need his consent to removal.

## B.    First Motion to Dismiss

Defendant Wellborn then filed a motion to dismiss Johnson's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), because Johnson was not a party to the mortgage loan and lacked standing to sue. According to the motion to dismiss, Johnson's mother was the borrower on the mortgage loan.

## C.    Motion to Remand

Plaintiff Johnson did not respond to Defendant Wellborn's motion to dismiss, but instead filed a motion to remand the action to state court. Johnson argued that removal by an in-state defendant based on diversity jurisdiction violated 28 U.S.C. § 1441(b). Johnson also averred that she sent copies of the

---

[1]Wellborn's notice of removal stated that Wellborn was a Florida law firm and a citizen of Florida and that Morris Laing was a law firm in Kansas.

complaint and waiver of service of process to both defendants via the U.S. Postal Service and electronically via e-mail.

The district court denied Johnson's motion to remand, finding that removal properly rested on federal question jurisdiction because Johnson's complaint alleged violations of federal law (the FHA and the FDCPA). The district court entered an order directing Johnson to show cause by December 7, 2009 why Wellborn's motion to dismiss should not be granted.

**D.    Amended Complaint**

On December 7, 2009, Johnson filed a response to the show cause order stating that she had not received Wellborn's motion to dismiss. On the same day, Johnson filed an amended complaint that (1) omitted the two federal claims and alleged only state law claims; and (2) stated that it was filed in response to Wellborn's motion to dismiss.

According to Johnson's amended complaint, Johnson resides at 715 North 24th Street in East Saint Louis, Illinois. Johnson is also "on the Deed and all property Tax and property Insurance documents." Ocwen holds the loan on the property, which is higher than the property's value. Defendants Wellborn and Kear are "debt collectors and agents" for Ocwen and are the only contact between Johnson and Ocwen.

4

On March 13, 2009, the Defendants, on behalf of Ocwen, "entered into a 'Loan Modification Offer'" with Johnson.[2]  Under the terms of the agreement, Johnson was required to send Ocwen $600, which she did in a timely fashion in March 2009.  After Ocwen received the payment, however, the loan modification was "denied without explanation."  Johnson was "unable to find out where the $600.00 was posted" or "where any of the Payments . . . ha[d] been posted."  Because Johnson had sent payments by certified mail, her only confirmation that her payments were received was the return receipt signature cards.

On July 31, 2009, Johnson signed a contract with a non-profit "home-save/home-refinance Agency," N.A.C.A., which began contacting Ocwen and the Defendants.  Meanwhile, the Defendants verbally informed Johnson that no modification or refinance proposals would be considered.  In a written letter, Ocwen told Johnson that the loan was not assumable.

---

[2]Johnson later filed a copy of this Offer, which was made by Wellborn on behalf of Ocwen to settle a separate lawsuit Johnson had filed against Ocwen.  Wellborn represented Ocwen in this other litigation.  Wellborn's March 13, 2009 Offer letter is addressed to Ida Mae Johnson, Plaintiff Paula Johnson's mother.  The Offer letter states that Ocwen will modify the existing mortgage if Ida Mae Johnson makes a down payment of $600 to Ocwen by March 18, 2009, and both Ida Mae and Paula Johnson sign a settlement and release agreement.  Under the modified mortgage, monthly payments of $544.46 would begin on April 15, 2009.  The Offer letter warned that the offer was valid only until March 18, 2009, after which Ocwen would proceed with litigation.

Johnson's amended complaint alleged that, to date, she had been unable to learn why the loan modification had been denied; why the loan was not assumable; why the loan could not be refinanced with N.A.C.A.; where the original $600 payment and the monthly payments had been posted; whether there were any accrued fees; and what the outstanding loan balance was. Johnson was "unable to gain 'access'" to Ocwen's website and, when she called Ocwen, she was told all contact had to be made through the Defendants.

Johnson's amended complaint contained three counts. Count I alleged that Defendants Wellborn and Kear tortiously interfered with her contract with N.A.C.A. Count I also alleged: (1) that Wellborn and Kear, as attorneys, were liable to third parties where their services aided Ocwen's illegal activities (such as fraud and misrepresentation); (2) that Wellborn and Kear through "negligent acts and omissions that breached a duty the attorney owed," which injured Johnson; and (3) that "[t]he fraudulent misrepresentation of the March 13, 2009 'Modification Offer' and the interference with the 'NACA Loan Modification and Refinance' ha[d] directly caused [Johnson] to be in a position that she will not be able to recover from Foreclosure Status."

Count II alleged that the Defendants, as joint tortfeasors, bore liability under the Illinois Joint Tortfeasor Contribution Act ("IJTCA"). Count III requested a

preliminary injunction to enjoin the Defendants from further tortious interference with Johnson's contractual relationship with N.A.C.A, "or any other home-save or home refinance agency or financial institution."[3]  Count III also listed these claims against the Defendants, which were the "cause for [Johnson] to request a Preliminary Injunction": "breach of contract, breach of fiduciary duty, conspiracy to breach fiduciary duty, tortious interference, conspiracy to tortious interference, fraud or alternatively negligent misrepresentation, conspiracy to fraud, fraudulent transfer, conversion, legal malpractice, negligence, unjust enrichment, and alternatively promissory estoppel or quantum meruit."

E.     **Second Motion to Dismiss**

In light of Johnson's amended complaint, the district court denied Wellborn's motion to dismiss as moot.  Wellborn then filed a motion to dismiss the amended complaint, arguing again that Johnson lacked standing to sue because she was not a party to the loan.  Wellborn's motion further contended that, because Johnson was not a tortfeasor, she had no standing to bring her state-law IJTCA claim.  The district court ordered Johnson to show cause why Wellborn's second motion to dismiss should not be granted.

F.     **Second Motion to Remand**

---

[3]Johnson's amended complaint mislabeled this count as Count IV.

Johnson never responded to the district court's order or to Wellborn's second motion to dismiss.

Instead, Johnson filed a second motion to remand her case to state court. Johnson argued, <u>inter alia</u>, that: (1) the claims in her amended complaint arose under state law, the parties were non-diverse and, consequently, subject-matter jurisdiction was lacking; (2) Defendant Wellborn's removal violated 28 U.S.C. § 1441(b) because Wellborn was a citizen of Florida; and (3) Defendant Kear failed to file a responsive pleading even though Johnson had served with him with notice of her action electronically and by U.S. First Class mail.

The district court denied Johnson's second motion to remand. The district court explained that Johnson could not rely on her amended complaint to defeat federal question jurisdiction because her original complaint, alleging federal claims, was properly removed to federal court.

## G. Dismissal Order Granting Wellborn's Second Motion to Dismiss

After setting the trial date, scheduling discovery and referring the case for mediation, the district court granted Wellborn's second motion to dismiss. The district court did not address Wellborn's standing argument, but instead concluded that Johnson's amended complaint failed to state a claim for which relief could be granted.

The district court first noted that Johnson had failed to respond to Wellborn's second motion to dismiss or the court's show cause order to do so. As to the tortious interference claim in Count I, the district court emphasized that Johnson did not allege she was a borrower on the mortgage or that she had any contractual relationship with Ocwen. Rather, Johnson's contract was with N.A.C.A., and the amended complaint did not allege any acts by the Defendants that prevented N.A.C.A. from fulfilling its contractual obligations to try to obtain a loan modification for Johnson.

The district court dismissed the IJTCA claim in Count II because the amended complaint did not allege that Johnson was a tortfeasor entitled to contribution. Finally, the district court dismissed Count III, concluding that, because Johnson failed to state a claim in her first two counts, she could not seek an injunction based on these claims. Johnson pro se appealed.

## II.  DISCUSSION

### A.  Motion to Remand

A defendant may remove to federal court an action filed in state court based on either diversity or federal question jurisdiction. 28 U.S.C. § 1441(a), (b). The removing defendant bears the burden to show the existence of federal subject-

matter jurisdiction.  <u>Pacheco de Perez v. AT&T Co.</u>, 139 F.3d 1368, 1373 (11th Cir. 1998).

Federal question jurisdiction exists if the plaintiff's action "arises under" the "Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. Generally, an action "arises under" federal law when federal law creates the cause of action.  <u>Pacheco de Perez</u>, 139 F.3d at 1373.  Where a defendant properly removes an action to federal court on the basis of federal question and supplemental jurisdiction, the district court "ha[s] discretion to retain jurisdiction over the state law claims even after [the plaintiff] amend[s] the complaint to remove any federal cause of action."  <u>Behlen v. Merrill Lynch</u>, 311 F.3d 1087, 1095 (11th Cir. 2002).[4]

Here, Defendant Wellborn removed Johnson's action based on both diversity and federal question jurisdiction.  Johnson's original complaint (filed in state court) alleged claims under the FHA and the FDCPA in addition to state law claims.  Thus, federal question jurisdiction existed at the time Wellborn filed its notice of removal.  The fact that Johnson later amended her complaint to remove

---

[4]We review <u>de novo</u> a district court's denial of a motion to remand.  <u>Moore v. N. Am. Sports, Inc.</u>, 623 F.3d 1325, 1328 (11th Cir. 2010).

the federal claims did not defeat the district court's removal jurisdiction over her supplemental state law claims.  See Behlen, 311 F.3d at 1095.[5]

There is no merit to Johnson's argument that removal was improper because Kear did not consent to it.  The requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served.  See Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202, 1208 (11th Cir. 2008) ("[A] defendant has no obligation to participate in any removal procedure prior to his receipt of formal service of judicial process.").

There is no evidence in the record that Kear was ever properly served, either while the action was in state court or after it was removed to federal court.  Nor is there evidence Kear waived service.  Johnson maintains that she "served" Kear by sending him copies of her complaint and a waiver of service of process via e-mail and U.S. mail on September 27, 2009.  This does not constitute proper service of process under either Florida or federal law.  See Fla. Stat. § 48.031 (providing that

[5]Because Wellborn's removal was properly based on federal question jurisdiction, it did not violate 28 U.S.C. § 1441(b)'s forum-defendant rule even though Wellborn is a citizen of Florida.  See 28 U.S.C. § 1441(b) (stating that a claim based on federal question jurisdiction is "removable without regard to the citizenship or residence of the parties"); Moore, 623 F.3d at 1328 (explaining that, under § 1441(b), an action "cannot be removed on the basis of diversity jurisdiction if a defendant is a citizen of the State in which such action is brought" (quotation marks omitted)).

11

service of process is made by delivering a copy of the complaint to the person to be served or leaving the copy at the person's usual place of abode with a person who resides there and who is fifteen years of age or older); Fed. R. Civ. P. 4(e) (requiring service of the summons and complaint by following the law of the forum state; delivering a copy of the summons and complaint to the defendant personally; leaving the copies at the defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or delivering copies to the defendant's agent for service of process).

Because Defendant Kear was not properly served, Defendant Wellborn did not need his consent to remove Johnson's action to federal court.[6]

**B.       Dismissal for Failure to State a Claim**

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010) (quotation marks omitted). "A claim has facial plausibility when the plaintiff

---

[6]Because Kear was not properly served and did not waive service, the district court could not have required Kear to file a responsive pleading and participate in the action, as Johnson suggests. See Murphy Bros., Inc., v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350, 119 S. Ct. 1322, 1327 (1999).

12

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks and brackets omitted). We agree with the district court that Johnson's amended complaint failed to state a claim for which relief could be granted.[7]

Under Florida law, to state a claim of tortious interference with a contractual relationship, a plaintiff must allege "(1) the existence of a business relationship or contract to which a plaintiff is a party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contractual breach; (4) the absence of justification or privilege; and (5) [that] the plaintiff suffered damages from the breach." Fernandez v. Haber & Ganguzza, LLP, 30 So. 3d 644, 646 (Fla. Dist. Ct. App. 2010). The amended complaint alleges that Plaintiff Johnson contracted with N.A.C.A. (denoted the "home-save/home-refinance Agency") to seek a loan modification from Ocwen, but that Ocwen denied modification without explanation and refused to allow Johnson to assume her mother's loan. Even assuming arguendo that the other elements were met, the amended complaint does not allege that the N.A.C.A. contract was

---

[7]We review de novo a district court's dismissal under Rule 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation marks omitted).

13

breached. On the face of the complaint. N.A.C.A. was not obligated to actually obtain the loan modification from Ocwen. In any event, even if N.A.C.A. breached the contract by failing to obtain the loan modification, the amended complaint does not allege that the Defendants procured that breach.

Johnson's amended complaint also refers to a loan modification offer pursuant to which Ocwen received $600 from Johnson, but then denied the loan modification without explanation. Even construing these allegations in Johnson's amended complaint liberally, they do not state a claim of tortious interference. To state a tortious interference claim, the interfering defendant must be a third party and a stranger to the business relationship; an employee or agent acting on behalf of a contracting party's interests cannot be liable. See Sloan v. Sax, 505 So. 2d 526, 527-28 (Fla. Dist. Ct. App. 1987). Johnson's amended complaint alleges that the Defendants were Ocwen's agents and does not allege that they were acting against the interests of their client, Ocwen. Thus, the Defendants were not strangers to any agreement between Ocwen and Johnson to modify the loan.[8]

---

[8]To the extent these allegations are construed as a claim of breach of contract, they also fail. Under Florida law, an agent is not liable for a disclosed principal's obligations under a contract that the agent negotiated or executed on behalf of the principal. Babul v. Golden Fuel, Inc., 990 So. 2d 680, 683 (Fla. Dist. Ct. App. 2008). Thus, to the extent Johnson alleges that Ocwen breached the loan modification offer, the Defendants cannot be held liable.

14

With respect the IJTCA claim, that state Act provides for a right of contribution among two or more joint tortfeasors. 740 Ill. Comp. Stat. 100/2(a). The contribution right "exists only in favor of a tortofeasor who has paid more than his pro rata share of the common liability." Id. 100/2(b); see Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. & Co., 810 N.E.2d 235, 244-45 (Ill. App. Ct. 2004). Johnson's amended complaint does not allege any facts to suggest she is a joint tortfeasor who has a right of contribution against the Defendants under the IJTCA.

Because the amended complaint's allegations do not support any substantive claims, Johnson was not entitled to receive an injunction based on these claims.[9] See Hall v. Hanford, 64 So. 2d 303, 304 (Fla. 1953) (concluding that when the complaint is dismissed, there is nothing before the court upon which a temporary injunction can issue); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) ("For a traditional injunction to be even

---

[9]Johnson's amended complaint listed within Counts II and III other state law claims, but did not allege any facts to support them. Additionally, Count II alleged that the Defendants, as attorneys, were liable for fraudulent misrepresentation as to the March 13, 2009 loan modification offer, but did not state what was misrepresented or how the Defendants participated in the misrepresentation. Accordingly, the district court properly dismissed these state law claims. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (explaining that although a complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to rise above the level of speculation); Fed. R. Civ. P. 8.

15

theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under [Rule] 12(b)(6) . . . .").

### III. CONCLUSION

For these reasons, the district court did not err in denying Johnson's motion to remand the case to state court or in dismissing Johnson's amended complaint for failure to state a claim.[10]

**AFFIRMED.**

---

[10]There is no merit to Johnson's argument that the district court's dismissal improperly obstructed the previously scheduled discovery and mediation. Where there are no legally supportable claims, the district court may properly terminate a case before discovery or other pre-trial proceedings. See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1997).