**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**November 3, 2020**

# In the Court of Appeals of Georgia

A20A1339. DD&D FAMILY PROPERTIES, LLC v. WRIGHT.

BARNES, Presiding Judge.

This lawsuit concerns title to certain real property sold at a tax sale. On cross-motions for summary judgment by the disputing parties, the trial court ruled in favor of R. David Wright and against DD&D Family Properties, LLC. For the reasons that follow, we vacate the judgment and remand the case.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable

to the nonmovant." (Citations and punctuation omitted.) *AgSouth FarmCredit, ACA v. West*, 352 Ga. App. 751, 752 (835 SE2d 730) (2019).

On July 5, 2017, the underlying tax sale was conducted against MHD Communities LLC and Kaila Fisher. DD&D Family Properties thereby acquired for the purchase price of $6,000 a tax deed to the Carroll County property known as 109 Holly Creek Drive within the Regal Oaks Subdivision (the "Property").

On July 5, 2018, Wright tendered a $7,608 check to DD&D Family Properties to redeem the property. Rejecting such tender, DD&D Family Properties mailed the check back to Wright's counsel on July 17, 2018, stating that "[i]n Georgia, only certain persons are authorized to redeem property from a tax sale. OCGA § 48-4-40.[1] Your client is not one of those persons." On July 20, 2018, Wright's counsel wrote DD&D Family Properties a letter acknowledging the return of Wright's tender.

---

[1] OCGA § 48-4-40 sets out:

Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption, as fixed and provided in Code Section 48-4-42: (1) At any time within 12 months from the date of the sale; and (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

Wright's counsel pointed out that he had already emailed to DD&D Family Properties a copy of the quitclaim deed by which Wright was claiming an interest in the Property, but was additionally attaching to the letter a copy of that quitclaim deed. Wright's counsel ended the letter with:

> I do not understand what game you . . . appear to be playing concerning this matter. I have attempted in good faith to contact you and obtain the information necessary to make the purchaser at the tax sale whole in accordance with the state statutes. The response has appeared to be avoidance and denial. If DD&D properties does not accept the tender of the funds to redeem the [P]roperty back to . . . Wright as the holder from the Defendant in Fi.Fa., then the appropriate action will be taken to recover the same through legal means and to pursue any and all claims for fees and bad faith damages.

On October 23, 2018, Wright filed the instant lawsuit, alleging that on June 20, 2018, he had obtained title to the Property through a quitclaim deed from a defendant in fi. fa. Wright attached a copy of the quit claim deed to his complaint; the quit claim deed identified the grantor, however, as "MHD Acceptance, LLC."[2] Wright sought, among other things, a declaratory judgment that he was a person authorized under

---

[2] It is undisputed that the grantor on the quitclaim deed was "MHD Acceptance, LLC," whereas the tax deed showed the defendants in fi. fa. as MHD Communities LLC and Kaila Fisher.

3

OCGA § 48-4-40 to redeem the Property from the tax sale purchaser by the payment of the amount required for redemption.

DD&D Family Properties denied that Wright was entitled to any relief, then filed a motion for summary judgment. Among the arguments advanced, DD&D Family Properties contended that Wright was not within any category of persons authorized to redeem the Property under OCGA § 48-4-40, asserting that the grantor on the quit claim deed was "someone that did not own the property at the time the [tax] deed was delivered." DD&D Family Properties also argued that the amount proffered by Wright for redemption was insufficient under OCGA § 48-4-42.[3] According to DD&D Family Properties, the required amount as of the date tendered was not $7,608; it was $7,800, which it calculated as $6,000 (amount paid at tax sale) + $1,200 (20 percent of amount for the first year) + $600 (10 percent for each

---

[3] OCGA § 48-4-42 (a) provides in relevant part here:

> The amount required to be paid for redemption of property from any sale for taxes as provided in this chapter shall with respect to any sale made after July 1, 2002, be the amount paid for the property at the tax sale . . . plus: . . . (3) A premium of 20 percent of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made *and* 10 percent for each year *or fraction of a year thereafter*.

(Emphasis supplied.)

subsequent year or portion thereof). Furthermore, DD&D Family Properties asserted that the right to redeem the Property was foreclosed on August 28, 2018 with proper notice having been provided to MHD Communities LLC and Kaila Fisher;[4] DD&D Family Properties went on to assert that Wright, "having a deed that was not recorded[,] was not required to be noticed."[5]

Thereafter, in July 2019, Wright tendered into the court's registry $7,800, as "the sum [DD&D Family Properties] claims was necessary to redeem the [P]roperty." He also filed a motion for summary judgment, arguing that he had demonstrated entitlement to redeem the Property.

---

[4] Wright has not disputed that the right to redeem was foreclosed on August 28, 2018.

[5] See generally *GE Capital Mtg. Svcs. v. Clack*, 271 Ga. 82, 85 (2) (a) (515 SE2d 619) (1999) (concluding that the failure to serve a defendant in fi. fa. under OCGA § 48-4-45 (a) (1) (A) did not affect the validity of the foreclosure of the right of redemption because "his interest did not appear of record in [the county in which the land was located] when the foreclosure of the right of redemption was begun").

After a hearing on the parties' cross-motions for summary judgment,[6] the trial court rejected the arguments advanced by DD&D Family Properties.[7] Granting Wright's summary judgment motion, the trial court thereby ordered DD&D Family Properties to convey the Property to Wright pursuant to OCGA § 48-4-44.[8] DD&D Family Properties now appeals.

1. As an initial matter, we note that the Supreme Court of Georgia outlined in *Ga. Land USA, LLC v. Ga. Power Co.*, 297 Ga. 237 (773 SE2d 236) (2015):

> [W]hen property is sold for unpaid taxes, the tax sale purchaser obtains a deed to the property. This deed, however, does not provide the tax sale purchaser with absolute title to the property, but rather gives the purchaser a defeasible fee interest therein with the title remaining

---

[6] The trial court conducted a hearing on the parties' summary judgment motions, but no transcript of that hearing has been included in the appellate record.

[7] The trial court found it "undisputed that both Wright and MHD Communities, LLC intended for the Property to be the subject of the quitclaim deed. Thus, the failure to have MHD Communities, LLC instead of MHD Acceptance, LLC convey the tract to Wright constituted a mutual mistake that was relievable in equity." (Punctuation omitted.) In so ruling, the trial court relied on OCGA § 23-2-25 ("If the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto."). Given our holdings below, we do not reach the propriety of this ruling. See Division 3, infra.

[8] OCGA § 48-4-44 (a) (providing, among other things, that "where property is redeemed, the purchaser at the tax sale shall make a quitclaim deed to the defendant in fi. fa.").

6

subject to encumbrance for at least one year after purchase due to other interested parties' statutory rights of redemption. . . . [A]fter the tax sale, the delinquent taxpayer[s] or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid and interest. If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale. This right of redemption, however, may be terminated by the tax sale purchaser anytime after one year following the tax sale. After that year has run, the tax sale purchaser may "terminate, foreclose, divest, and forever bar" all rights to redeem the property by giving notice under OCGA § 48-4-40 et seq. ("the barment statutes") to all parties with redemption rights. The barment statutes apply to all persons having any right, title or interest in, or lien upon the subject property.

(Citations and punctuation omitted.) Id. at 239-240 (1).

2. DD&D Family Properties maintains that it was entitled to summary judgment. Among the grounds argued, it claims that Wright failed to tender timely the statutory redemption amount. More specifically, DD&D Family Properties asserts that Wright's $7,608 check (tendered on July 5, 2018, which was prior to the foreclosure of the right of redemption) failed to include sufficient premium. Pursuant to OCGA § 48-4-42 (a) (3), premium accrues as follows: "A premium of 20 percent

7

of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made *and* 10 percent for each year or fraction of a year thereafter." (Emphasis supplied.)

The record shows that the trial court essentially concluded that the statutory premium had accrued only "for the first year or fraction of a year" – that is, no (additional) premium had accrued "for each year or fraction of a year thereafter." In reaching that conclusion, the trial court expressly discerned that "[DD&D Family Properties'] calculations did not account for OCGA § 1-3-1 (d) (3)." In full, that provision states:

> Computation of Time. *Except as otherwise provided by time period computations specifically applying to other laws*, when a period of time measured in days, weeks, months, years, or other measurements of time except hours is prescribed for the exercise of any privilege or the discharge of any duty, the first day shall not be counted but the last day shall be counted; and, if the last day falls on Saturday or Sunday, the party having such privilege or duty shall have through the following Monday to exercise the privilege or to discharge the duty. When the last day prescribed *for such action* falls on a public and legal holiday as set forth in Code Section 1-4-1, the party having the privilege or duty shall have through the next business day to exercise the privilege or to discharge the duty. When the period of time prescribed is less than seven

days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.

(Emphasis supplied.) As the trial court further reasoned in the contested summary judgment order,

July 4, 2018 (Independence Day) was a legal holiday set forth in OCGA § 1-4-1[9] such that Wright's privilege to redeem the [P]roperty extended to the next business day, that of July 5, 2018. Therefore, the amount due to redeem the [P]roperty would have been $6,000 (purchase price) + $1,200 (20% of $6000) or $7,600, which was the amount tendered by Wright.[10]

DD&D Family Properties takes issue with the trial court's rationale, urging that:

The 10 percent premium is due after the first year of the sale. It is not a computation of time it is a due date. A promissory note due on July 4, 2018 is in default on July 5, 2018. It is not a measurement of time; it is computation of an amount due to redeem. It is not a privilege or a

_____

[9] OCGA § 1-4-1 (a) (explaining which days the "State of Georgia shall recognize and observe as public and legal holidays").

[10] The trial court's mathematical calculation is erroneous; but for reasons explained below, the amount of $7,600, as well as the actual amount of the check ($7,608) tendered on July 5, 2018, failed to include sufficient premium.

9

discharge of a duty. The 10 percent premium after the first year is also due for a fraction of a year.

We agree with DD&D Family Properties that nothing in OCGA § 1-3-1 (d) (3) authorized the trial court to treat July 5, 2018 as falling within the first year of the redemption period for purposes of calculating the premium due. As OCGA § 1-3-1 (d) (3) states at its outset, it governs "[e]xcept as otherwise provided by time period computations specifically applying to other laws." For purposes of calculating the premium component of the required redemption amount, OCGA § 48-4-42[11] specifically provides for its own time period computations.

In *Southerland v. Bradshaw*, 255 Ga. 455 (339 SE2d 579) (1986), the Supreme Court of Georgia ascertained,

> [B]y establishing the reference points of OCGA § 48-4-42 as "each year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made," the General Assembly has demonstrated its intention to compute the time period for which a ten percent premium is due as a twelve-month year running from the date of sale.

---

[11] See note 3, supra.

(Emphasis omitted.) Id. at 456 (2).[12] As a readily apparent example of a "year,"

*Southerland* pointed to the period of time "running from the first day of January

through the thirty-first day of December." Id. Further, *Southerland* critically held that

the "premium of OCGA § 48-4-42 . . . begins to run at the date of the tax sale." Id. at

456 (2). Hence, *Southerland* explained that the first year in that case – for purposes

of calculating premium under OCGA 48-4-42 – ran from the date of the tax sale,

December 2, 1980, through December 1, 1981. Id. at 455-456 (2).

In accordance with *Southerland*, the "first year" in this case – for purposes of

calculating accrued premium pursuant to OCGA § 48-4-42 – ran from the date of the

tax sale, July 5, 2017, through July 4, 2018. It follows then that because the first year

ended on July 4, 2018, July 5, 2018 fell within a "fraction of a year thereafter,"

thereby requiring an *additional* 10 percent be included as premium. And we see

nothing in OCGA § 48-4-42 barring premium from accruing on Independence Day

or any other day, whether contemplated as a holiday by OCGA § 1-4-1, or not.

Indeed, "[t]he intent and purpose of this payment under OCGA § 48-4-42 is to *fully*

---

[12] While *Southerland* reviewed a former version of OCGA § 48-4-42, the subsequent statutory modifications do not render *Southerland* inapposite for purposes here.

11

compensate the owner for what he paid plus [the premium]." (Emphasis supplied.) *Southerland*, 255 Ga. at 456 (2).

The trial court thus erred in its determination that "the amount due to redeem the [P]roperty would have been $6,000 (purchase price) + $1,200 (20% of $6000) or $7,600." Contrary to the trial court's rationale, OCGA§ 1-3-1 (d) (3) was not applicable to the proper calculation of the amount of premium that had accrued under OCGA § 48-4-42 (a) (3).[13] The trial court's conclusion that Wright timely tendered the required redemption amount was thus erroneous.[14]

---

[13] Also faulty with the trial court's rationale is the premise that the last day to redeem the Property was July 4, 2018. See generally OCGA § 1-3-1 (d) (3) (providing that "[w]hen the last day prescribed" to exercise a privilege falls on a holiday, the party having the privilege has through the next business day to exercise such privilege). As noted above, OCGA § 48-4-40 allows property sold at a tax sale to be redeemed: "(1) At any time within 12 months from the date of the sale; *and* (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45." (Emphasis supplied.) Here, there was neither evidence, nor any assertion that the last day to redeem the Property was July 4, 2018.

[14] Wright makes no contention that the payment into the court's registry was made prior to the foreclosure of the right of redemption; nor does he contend that such payment was otherwise timely under OCGA § 48-4-40. See generally *Saffo v. Foxworthy, Inc.*, 286 Ga. 284, 286 (2) (687 SE2d 463) (2009) ("Service of the notice of foreclosure of the right of redemption bars the filing or continuance of any action to set aside, cancel, or in any way invalidate the tax deed referred to in the notice or the title conveyed by the tax deed, unless the plaintiff *first* pays or tenders the full redemption amount.") (emphasis supplied); *Natl. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 43 (2) (586 SE2d 235) (2003) ("The effect of expiration of the redemption

12

Citing *Mark Turner Properties v. Evans*, 274 Ga. 547 (554 SE2d 492) (2001),Wright alternatively argues,

> Even if the tender occurred on a date which required application of the [additional 10 percent] premium, the letter set by Wright's Counsel on or about July 20, 2018, [DD &D Family Properties'] conduct thereafter, and Wright's payment into the registry, dispensed with the formality of Wright tendering the full amount until the matter was resolved.

In *Mark Turner Properties*, the Supreme Court held, "Where . . . an offer is made to pay whatever amount is due, and the person to whom tender is due refuses by her conduct to accept any amount, the refusal dispenses with the formality of making a legal tender." Id. at 550 (3).[15] Because the trial court did not reach this argument, we

---

period and bar of the right of redemption is to vest the purchaser with an absolute and unconditional title to the land, provided such title was owned by the original owner, and the tax sale was valid.") (citation and punctuation omitted); *Machen v. Wolande Mgmt. Group*, 271 Ga. 163, 166 (1) (517 SE2d 58) (1999) ("Appellants failed to exercise their right of redemption in a timely manner. Any tender after the time allowed by law for redemption under a tax sale is without effect.").

[15] See also *Strong v. JWM Holdings*, 341 Ga. App. 309, 313-314 (1) (800 SE2d 380) (2017) (reciting that "tender of the amount required for redemption is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, an acceptance of it will be refused," that "for an actual tender to be waived by the word or conduct of the party entitled to payment, it is still necessary for the party seeking redemption to make an actual, present bona fide offer to pay that which is due before filing the redemption action"; and that "[e]xpressing a general willingness or desire to redeem the property is not sufficient;

13

do not consider it here; we vacate the summary judgment rulings and remand this case for further proceedings not inconsistent with this opinion. See *Amin v. Guruom, Inc.*, 280 Ga. 873, 875 (635 SE2d 105) (2006) (vacating summary judgment ruling that was based on an erroneous legal theory, and remanding case for further proceedings consistent with opinion).

3. In light of Division 2, we do not reach at this time the remainder of DD&D Family Properties' claims of errors.

*Judgment vacated and case remanded. Gobeil and Pipkin, JJ., concur.*

---

there must be an actual offer to pay the required redemption price") (citations, punctuation, and emphasis omitted).